**LAW OFFICES OF BADMA GUTCHINOV**
Badma Gutchinov #140040
P. O. Box 16431
San Francisco, CA 94116
(415) 572-7075
Email: bgutchinovesq@yahoo.com

*Attorney for Debtor*

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>JEFFREY E. DEWEESE,<br><br>                       Debtor. | Case No. 19-30625 HLB13<br><br>CHAPTER 13<br><br>**MOTION FOR ENTRY OF ORDER APPROVING SECOND STIPULATION AMONG DEBTOR AND SAINT FRANCIS MEMORIAL HOSPITAL**<br><br>[No Hearing Requested] |

    Debtor JEFFREY E. DEWEESE hereby moves the Court for Entry of Order approving Second Stipulation Among Debtor and Saint Francis Memorial Hospital under Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**I.**    **INTRODUCTION**

    As more fully set forth herein, Jeffrey E. DeWeese (the "**Debtor**" or "**Physician**") and Saint Francis Memorial Hospital ("**SFMH**," together with the Debtor, the "**Parties**") seek to resolve issues remaining outstanding between the Parties following the *Order Granting Motion for Entry of Order Approving Stipulation among Debtor and Saint Francis Memorial Hospital for Resolution of Occupancy Dispute* [Docket No. 107]. The Parties have reached mutual agreement on the terms and consideration for settlement of these outstanding issues. Therefore, the Debtor requests that

the proposed compromise and the Stipulation be approved.

**II.     JURISDICTION**

The Court has jurisdiction over this case, the Debtor's Estate and this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of the case is proper pursuant to 28 U.S.C. § 1409.

The statutory predicate for the relief requested herein is Rule 9019(a) of the Federal Rules of Bankruptcy Procedure and section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**").

**III.     FACTUAL BACKGROUND**

1. Physician's clinical privileges were summarily suspended by the SFMH Medical Staff Medical Executive Committee ("**MEC**") on November 19, 2018. After investigation, the MEC maintained the summary suspension and recommended termination of Physician's Medical Staff membership.

2. Physician requested a hearing before a Judicial Review Committee ("**JRC**") to contest both MEC decisions as provided for in the Medical Staff Bylaws and under California law (Business and Professions Code Section 809 et seq.).

3. On June 8, 2020, the JRC issued a written decision upholding the MEC's actions on both issues. Physician has filed a timely notice of appeal with the SFMH Board of Directors as is also provided for under the Medical Staff Bylaws.

4. Physician is also party to Amended and Restated 1199 Bush Street Lease dated July 3, 2014 (as amended or restated, the "**Lease**"), whereby Physician agreed to rent specified premises for a term expiring May 31, 2020.

5. Physician filed Chapter 13 bankruptcy on June 10, 2019.

6. Physician has failed to pay monthly rent, monthly late charges, holdover rent, and other amounts due and owing under the Lease since July 1, 2019 to the present.

7. SFMH has made numerous attempts to collect from Physician amounts due under

the Lease, and has taken steps requiring Physician to vacate the premises including, but not limited to, commencement of eviction proceedings.

8. Physician vacated the premises specified in the Lease in late May, 2020.

9. Physician has asserted claims, offsets, and other defenses against SFMH relating to amounts due under the Lease.

10. SFMH has considered asserting a claim for the amounts due under the Lease in the Physician's bankruptcy proceedings, but acknowledges there is a potential for expansive litigation and no assurance of recovery even if SFMH prevails in obtaining a claim in the full amount requested.

11. At this time the Parties desire to avoid further time and expense on these matters and to fully and finally resolve all differences by this Agreement.

**IV.     THE TERMS OF THE PROPOSED COMPROMISE**

The Debtor and SFMH have negotiated the Stipulation resolving the outstanding issues between and among the Parties. To avoid the fees and costs of litigation regarding this matter, and subject to Bankruptcy Court approval herein after notice to creditors, the Debtor and SFMH have agreed to resolve these disputes. (*See* Declaration off Jeffrey DeWeese ("**DeWeese Declaration**") as attached hereto).

The Stipulation provides that:

  i.  SFMH shall pay to Physician the sum of One Hundred Thousand Dollars ($100,000) with the payment check to be issued within fifteen (15) days after Court approval of the Agreement and sent by certified mail to an address to be provided by Physician. The Physician from his SFMH's Settlement to: (1) Fay Servicing on Loan #0446 a sum of $82,826.69 as of June 30, 2020 for payment of arrears on his San Francisco Condo Home located 851 Van Ness Avenue, San Francisco, California; (2) Chelsea Court Owners' Association $3,136.26; (3) Dr. DeWeese $5,037.15; and (4) Chapter 13 Trustee for Plan Payment of $9,000.
  ii. Physician withdraws his appeal to the Board of Directors of the JRC decision and agrees not to contest, through litigation or otherwise, the decision of the JRC and to not seek damages, compensation or redress of any kind, through litigation or otherwise, related to the actions of the MEC and/or the JRC decision. Physician further agrees to not contest, through litigation or otherwise, the decision of the JRC and to not seek damages, compensation or redress of any kind, through litigation or

otherwise, related to the actions of the MEC and/or the JRC decision. Physician also further agrees to not contest, through litigation or otherwise, any matters involving the Lease or and not to seek damages, compensation or redress of any kind, through litigation or otherwise, related to the Lease.

iii. Physician resigns from the Medical Staff of SFMH and agrees not to reapply for Medical Staff membership or clinical privileges.

iv. SFMH and its MEC will file final reports with the Medical Board of California and the National Practitioner Data Bank, as required by law, reflecting the decisions of the JRC. Such reports will state that the actions of the MEC were based upon Physician's behavior in the clinical setting but were not based on his clinical competence.

v. The Parties agree and promise that they will not make any disparaging, negative, derogatory, or unfavorable statements, filings or representations, verbally or in writing, directly or indirectly, about each other or the actions of the MEC to any person or entity. For purposes of this paragraph, a disparaging statement or representation is any communication which, if publicized to another, would cause or tend to cause the recipient of the communication to question the integrity, competence, quality of service(s) or character of the person or entity to which the communication relates. This paragraph shall not prevent Physician from responding to questions from future and prospective employers, the Medical Board of California and the National Practitioner Data Bank.

vi. Physician fully releases and forever discharges SFMH, the MEC and its members, voting or non-voting, and the JRC and its members, their respective officers, directors, members, employees, agents, successors, attorneys, insurers and all members of the Medical Staff (collectively, "**SFMH Releasees**") from any and all claims, duties, demands, causes of action (in law or in equity), damages, debts, liens or liability of any nature whatsoever, whether known or unknown, arising out of or relating to the actions and recommendations of the MEC (summary suspension of clinical privileges and termination of Medical Staff membership), matters involving the Lease or any other acts of omissions of a Hospital Releasee occurring prior to the effective date of the Agreement.

vii. SFMH and its MEC hereby release and forever discharge Physician and his present and former agents, successors, attorneys, insurers and employees (collectively "**Physician Releasees**") from any and all claims, duties, demands, causes of action (in law or equity) damages, debts, liens or liability of any nature whatsoever, whether known or unknown, arising out of or relating to the actions or recommendations of the MEC (summary suspension of clinical privileges and termination of Medical Staff membership), the Lease and amounts due under the Lease or any other act or omission of Physician occurring prior to the effective date of the Agreement..

viii. Each Party agrees never to commence, prosecute, assist in any way, permit or cause to be commenced or prosecuted any action at law suit in equity, or any other proceeding which relates, directly or indirectly, to any claims, duties, demands, causes of action (in law or equity), damages, debts, liens or liabilities released by such Party under the Agreement.

ix. Each party represents and warrants that it has not heretofore assigned or transferred or purported to transfer or assign to any person, firm, corporation or entity, any

| | | |
|---|---|---|
| 1 | | claim, demand, duties, damages, debts, liabilities, actions or causes of action herein released by such Party. |
| 2 | x. | Each party acknowledges that it has been informed of the provisions of Section 1542 of the Civil Code of the State of California and does hereby expressly waive and relinquish all rights and benefits which it has, may have, or had under that Section. |
| 3 | | |
| 4 | xi. | Each party shall bear its own costs and expenses, including attorneys' fees, in connection with the negotiation, preparation and execution of the Agreement. If either party brings an action to enforce rights hereunder, the prevailing party in any such action shall be entitled to recover its costs and expenses, including reasonable attorney's fees and expert witness fees and costs, incurred in connection with such lawsuit. |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | xii. | The Agreement sets forth the entire understanding of the parties in connection with the subject matter of this Agreement. Neither party has made any statement, representation, or warranty in connection herewith which has been relied upon by the other party or which has been an inducement for any party to enter into the Agreement, except as expressly set forth in the Agreement. It is expressly understood and agreed that the Agreement may not be altered, amended, modified, or otherwise changed in any respect whatsoever except by writing duly executed by authorized representatives of the parties. The parties agree that they will make no claim at any time that the Agreement has been altered or modified or otherwise changed by oral communication of any kind or character. |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | xiii. | The parties acknowledge and understand that the Agreement constitutes a compromise in and settlement of disputed claims. No action taken by either party, either previously or in connection with the Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims heretofore made by that party, or an acknowledgment or admission by that party of any fault or liability whatever to the other party or to any other person or entity. |
| 15 | | |
| 16 | | |
| 17 | xiv. | Each of the parties covenants, represents and warrants that he, she or it has all authority necessary to execute the Agreement and that, on execution, it will be fully binding and enforceable in accordance with its terms, and that no other consents or approvals of any other person or third parties are required or necessary for the Agreement to be so binding. |
| 18 | | |
| 19 | | |
| 20 | xv. | The Agreement shall be binding upon and shall inure to the benefit of the respective parties, their respective legal successors, heirs, administrators and assigns, and each of them. |
| 21 | | |
| 22 | xvi. | Each of the parties have had the benefit of the advice of counsel in reviewing, negotiating and executing the Agreement, and accordingly the normal rule of construction to the effect that any ambiguities are to be construed against the drafting party shall not be employed in the interpretation of the Agreement. |
| 23 | | |
| 24 | xvii. | The Agreement shall be interpreted in accordance with and governed in all respects by the laws and in the courts of the State of California. |
| 25 | xviii. | The Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall be deemed to be and constitute one and the same instrument. |
| 26 | | |
| 27 | xix. | Each of the parties shall keep the Agreement and its terms confidential, except (a) as required by judicial or regulatory process or governmental audit, (b) to accountants for tax and accounting purposes, (c) for the internal business needs of |
| 28 | | |

    each party, and (d) if necessary to defend or prosecute any action involving this Agreement.
- xx. Each Party represents that it is executing the Agreement voluntarily and without any duress or undue influence on the part of or behalf of the other Party, and acknowledges that he, she, or it (a) has read the Agreement; (b) has been represented in the preparation, negotiation, and execution of the Agreement by legal counsel of his, her, its own choosing; (c) understands the terms and consequences of the Agreement and the general and specific releases it contains; and (d) is fully aware of the legal and binding effect of the Agreement.
- xxi. The Agreement is fully effective and binding as of the date of the Bankruptcy Court's approval of the Agreement.

The Debtor believes that the proposed compromise is in the best interest of creditors, that the Debtor is well within his business judgment in determining to enter into the Stipulation, and that it should be approved by the Court. (DeWeese Declaration).

## V.     DISCUSSION

### A. Legal Standard for Settlement and Compromise

Bankruptcy Code § 105(a) provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Bankruptcy Rule 9019(a) in turn states:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to the creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the Court may direct.

"The bankruptcy court has great latitude in approving compromise agreements." *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating contested and dubious claims." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986) [hereinafter "*A & C Properties*."] Accordingly, in approving such an agreement, the Court need not conduct an exhaustive investigation into the validity, or a mini-trial on the merits, of the claims sought to be compromised. *United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.)* 669 F.2d 1325, 1328 (9th Cir. 1982).

Rather, it is sufficient that the Court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. *A & C Properties*, 784 F.2d 1377 at 1381. The Court need only canvass the issues to determine whether the compromise falls "below the lowest point in the zone of reasonableness." *Newman v. Stein*, 464 F.2d 185, 189 (2d Cir. 1972); *see also Anaconda-Ericsson Inc. v. Hessen (In re Teltronics Servs., Inc.)*, 762 F.2d 185, 189 (2d Cir. 1985). Finally, although the Court should consider the reasonable views of creditors, "objections do not rule. It is well established that compromises are favored in bankruptcy." *In re Lee Way Holding Co.,* 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990).

In the Ninth Circuit, courts generally look to the following considerations in determining whether a proposed compromise is reasonable, fair, and equitable:

a) the probability of success in the litigation;

b) the difficulties, if any, to be encountered in the matter of collection;

c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;

d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*A & C Properties*, 784 F.2d 1377 at 1381.

**B. The Stipulation Should Be Approved**

Each of the *A &C Properties* factors weigh heavily in favor of approval of the Stipulation. First, the hospital privileges proceedings have been ongoing for more than a year now, and have consumed party resources and time. Also, Debtor has asserted claims, offsets, and other defenses against SFMH relating to amounts due under the Lease. SFMH has considered asserting a claim for the amounts due under the Lease in the Physician's bankruptcy proceedings, but acknowledges there is a potential for expansive litigation and no assurance of recovery even if SFMH prevails in

obtaining a claim in the full amount requested.

At this time the Parties desire to avoid further time and expense on these matters and to fully and finally resolve all differences by this Agreement. Accordingly, the interests of creditors and the estate are best served by approval of the Stipulation.

## VI. CONCLUSION

Based on the foregoing, the Debtor respectfully requests entry of the order, a copy of which is attached hereto as **Exhibit A**, approving the proposed compromise with the Debtor and SFMH, approving the Stipulation, and granting such other and further relief as the Court deems just and proper.

DATED: July 15, 2020                                   LAW OFFICES OF BADMA GUTCHINOV

By: */s/ Badma Gutchinov*
Badma Gutchinov, Esq.
*Attorney for Debtor*